Van Raalte v. Harrington.

VAN RAALTE, *Appellant*, v. HARRINGTON.

1. **Fraudulent Conveyance:** RELATIONSHIP OF DEBTOR AND PREFERRED CREDITOR. While a debtor has the right to prefer even his relatives among creditors, yet the fact of such relationship is one to be considered by the jury in connection with the other circumstances on the question of intent to defraud his creditors.

2. ————: EVIDENCE OF FRAUDULENT PURPOSE. Direct or positive evidence of knowledge or notice by a vendee of his vendor's purpose to defraud his creditors is not required; such notice or knowledge may be inferred from circumstances.

3. ————: ————. The evidence in this case deemed sufficient to authorize the court to submit to the jury the question of the purchaser's good faith.

4. ————: STATUTE: BONA FIDE PURCHASER FOR VALUE. The second section of the statute of fraudulent conveyances, Revised Statutes, 1879, section 2497, does not apply to conveyances of property real or personal where the vendee is a *bona fide* purchaser for value.

5. ———: VENDEE'S NOTICE OR KNOWLEDGE OF FRAUDULENT INTENT, RULE AS TO. Where the vendee has paid a valuable consideration and it is sought to avoid the sale because he had notice or knowledge of a fraudulent intent on the part of his vendor, the question to be submitted to the jury is whether he had notice or knowledge of the. fraudulent purpose of the vendor and not whether he had knowledge of facts which would put a prudent person on inquiry and lead to the discovery of the fraud.

*Appeal from St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

REVERSED AND REMANDED.

*Alexander Martin* and *J. S. Laurie* for appellant.

(1) The refusal of the trial court to submit special issues to the jury as prayed by plaintiff constitutes reversible error. R. S. 1889, secs. 6594, 6596, 6598; *Commonwealth v. Desmond*, 123 Mass. 407; *Rogers v. Railroad*, 35 Mo. 153; *State v. Proctor*, 90 Mo. 334; *State v. Railroad*, 32 Fed. Rep. 722; *Jennings v. Cutler*, 12 Kan. 500; *State v. Crawford*, 11 Kan. 32; *Powers v. Kneckhoff*, 41 Mo. 425; *Marmaduke v. McMasters*, 24 Mo. 51. (2) The instructions given by the court disregard the issue of actual fraud made by the pleadings and submit the case to the jury on an erroneous theory. *Fraser v. Passage*, 63 Mich. 551; *Carroll v. Hayward*, 124 Mass. 120; *Coolidge v. Heneky*, 11 Or. 327; *Parker v. Conner*, 93 N. Y. 118; *French v. Reed*, 70 Ia. 122; *Shroeder v. Walsh*, 120 Ill. 403; *Catchings v. Harcrow*, 49 Ark. 20; *Cook v. Cook*, 43 Md. 523; *Dougherty v. Cooper*, 88 Mo. 602; *Frederick v. Allgaier*, 88 Mo. 602; *Sexton v. Anderson*, 93 Mo. 373; *Hamilton v. Marks*, 63 Mo. 167. (3) The court by refusing instructions as prayed for by plaintiff denied him his proper attitude as purchaser for value and placed him in a false light before the jury. Instruction number 10 is proper in form and elementary in principle. *Albert v. Besel*, 88 Mo. 150; *Jones v. Simpson*, 110 U. S. 609; *Schroeder v.*

*Walsh*, 120 Ill. 403; *Shelley v. Booth*, 73 Mo. 74; *Sexton v. Anderson*, 95 Mo. 379; *Levey v. Adler*, 97 Mo. 413; *Ryan v. Young*, 79 Mo. 30; *Holmes v. Braidwood*, 82 Mo. 610. (4) There is no evidence to support the verdict. *Hipsley v. Railroad*, 88 Mo. 348; *Hearns v. Keith*, 63 Mo. 84; *Lomer v. Meeker*, 25 N. Y. 361; *Evans v. George*, 80 Ill. 51; *Lionberger v. Pohlman*, 16 Mo. App. 392; *Hausman v. Hope*, 20 Mo. App. 193; *Waddingham v. Loker*, 44 Mo. 132; *Funkhouser v. Lay*, 78 Mo. 458; *Priest v. Way*, 87 Mo. 16; *State v. Primm*, 98 Mo. 373. The burden of proof was on defendant to establish notice, and, there being a total and absolute failure of evidence on the point, the verdict should not be permitted to stand. *Hearn v. Keith*, 63 Mo. 84; *Whitsett v. Ransom*, 79 Mo. 258; *Spohn v. Railroad*, 87 Mo. 74; *Chandler v. Fleeman*, 50 Mo. 237; *Dunn v. Dunnaker*, 87 Mo. 597. (5) There was no evidence tending to show the market value of the goods at the date of the trial.

*Lee & Ellis, David Goldsmith* and *Albert Arnstein* for respondent.

(1) The court committed no error in refusing to submit the special issues; the questions submitted under the law of 1885 should be material issues made by the pleadings. *Flannery v. Railroad*, 23 Mo. App. 120; *Turner v. Railroad*, 23 Mo. App. 12; *Chicago v. Dunlevy*, 22 N. E. Rep. 15; *Blake v. Davis*, 20 Ohio, 231; *Benton v. Railroad*, 25 Mo. App. 155; *Jackson v. Ins. Co.*, 27 Mo. App. 62. (2) The theory upon which the issue of fraud was submitted to the jury was the correct one. There is unquestionably a direct conflict among the authorities as to whether or not a vendee must have actual knowledge of the vendor's fraudulent intent or whether constructive notice will suffice. In this state the law is settled in favor of the latter theory. *Rupe v. Alkire*, 77 Mo. 641; *State v.*

*Estell*, 6 Mo. App. 6. The following authorities support this view : *Blum v. Simpson*, 66 Tex. 84; 71 Tex. 628; *Hooser v. Hunt*, 65 Wis. 71 ; *Bedford v. Penny*, 58 Mich. 424; *Bollman v. Lucas*, 22 Neb. 796 ; *Dyer v. Taylor*, 50 Ark. 314 ; *Hoy, etc., Co. v. Turner*, 85 Ala. 465 ; *Beddenger v. Weland*, 67 Md. 359 ; *Thompson v. Duff*, 19 Bradw. ( Ill.) 78 ; *Spaulding v. Adams*, 63 Ia. 437 ; *Gollober v. Martin*, 33 Kan. 255 ; *Wells v. McMahon*, 18 Pac. Rep. ( Wash.) 73 ; *Moore v. Williamson*, 15 Atl. Rep. 587 ; *Wood v. Elliott*, 7 S. W. Rep. 624 ; *The Holladay Case*, 27 Fed. Rep. 830 ; *Bartles v. Gibson*, 17 Fed. Rep. 297 ; *Singer v. Jacobs*, 11 Fed. Rep. 559. The text-writers also support this view : Wait on Fraud. Con. [ 2 Ed.] sec. 379, *et seq.;* Bump on Fraud. Con. [ 3 Ed.] pp. 201, 202 ; Bigelow on Fraud, pp. 386, 387 ; Kerr on Fraud and Mistake [ 2 Ed.] pp. 246, 247. Besides appellant's own instructions are framed on the same theory and he cannot now object to the form in which the issue of fraud was submitted to the jury. *Bettes v. Magoon*, 85 Mo. 580 ; *Thorpe v. Railroad*, 89 Mo. 650 ; *Noble v. Blount*, 77 Mo. 235 ; *Bank v. Hammerslough*, 72 Mo. 274 ; *Smith v. Culligan*, 73 Mo. 387 ; *Loomis v. Railroad*, 17 Mo. App. 340 ; *Straat v. Hayward*, 37 Mo. App. 585.

BLACK, J.—This is a controversy over a stock of merchandise consisting of dry goods, notions, clothing, hats and caps, and boots and shoes. Adolph Lederer being the owner and in possession of the goods sold the same to Samuel Van Raalte who took immediate possession. Thereupon the defendant, as sheriff of St. Louis, levied upon the property by virtue of several writs of attachment sued out by the mercantile creditors of Lederer. Van Raalte then commenced this action of replevin, gave bond and reacquired possession. The sheriff defends on the ground that the sale was one made in fraud of creditors and that plaintiff purchased with full knowledge of the intended fraud.

Plaintiff was a pawnbroker and dealer in jewelry and to a limited extent in other merchandise at Fourth street in the city of St. Louis; he had associated with him his stepfather, Julius Van Raalte, as a partner in the profits of the business. Lederer carried on a mercantile business at Chouteau avenue in the same place. The evidence of plaintiff and of Julius Van Raalte is, that Lederer came to their store and proposed to sell his entire stock of goods, saying he was old, feeble and not capable of transacting business; that he wanted to sell out, straighten up his affairs and quit business. Julius Van Raalte examined the goods and made a report to the plaintiff, and the parties then commenced taking an invoice. All this occurred on the second of October, 1886.

The invoice, which amounted to something over eleven thousand dollars, at cost prices, was completed on the sixth of the same month. Lederer then offered to take seventy-five cents on the dollar, and Julius Van Raalte offered sixty-five, and the trade was closed at the last-named price. The parties then went to the Fourth-street store, where plaintiff paid seventy-two hundred and thirteen dollars, for the goods in cash over the counter, and Lederer gave to the plaintiff full and complete possession of the property. Subsequently Lederer paid from the proceeds arising from the sale a note due at bank for five hundred dollars on which his son-in-law was surety. He paid to his son Emil, a young man twenty-eight years of age, forty-eight hundred dollars, and to his other son Samuel, twenty-two years old, fifteen hundred dollars. He applied about two hundred dollars in payment of other debts. The evidence of the Lederers is that the father owed the sons the above-named amounts for services and for moneys advanced. A few days before the sale to plaintiff, Lederer turned over to a son-in-law goods costing three thousand dollars to secure a debt of two thousand dollars. These goods were placed in an

auction house, and were subsequently sold to pay that debt. The above transactions left Lederer without property, and owing the attaching creditors some ten thousand dollars for goods purchased on time for the fall trade, the bills not being due at the date of the sale to plaintiff.

Plaintiff says he had contemplated extending his business, so that the purchase was in line with a previously formed design. A few days after he opened the Chouteau-avenue store, he removed goods invoiced at fourteen hundred and sixty-three dollars to the Fourth-street store and sold the remainder of the new purchase at auction ; the goods thus sold realized something in excess of the price paid therefor. The change in the plaintiff's design to extend his business is accounted for on the ground of his ill health.

When the trade was consummated, plaintiff called in his attorney who prepared and Lederer signed and acknowledged a bill of sale. Inquiries were then made of Lederer as to his title to the goods, and of his wife whether she had any interest therein, but no inquiries were made as to the extent of the vendor's indebtedness. Plaintiff says he did not know that his vendor was indebted to the attaching creditors, or to any other person.

The Chouteau-avenue store was kept open while the parties were taking the invoice, and goods which arrived during that time were not included therein. There is some evidence to the effect that goods were shipped from the store during that time, and there is much evidence to a contrary effect. Lederer held a lease upon his store premises, and he and his son appear to have been designated as lessees. This lease was transferred to the plaintiff who leased the second story of the building to Lederer where the latter, his wife and two sons continued to reside as before the sale to plaintiff. Some time previous to this sale one of the sons of Lederer had worked for the plaintiff at his

Fourth-street store. There are some other circumstances in evidence which we deem it unnecessary to recite.

1. The point urged with so much confidence by the plaintiff, who is the appellant, that there is no evidence tending to show that Lederer intended to defraud his creditors cannot be sustained. Lederer, it is true, had a right to prefer some creditors to others, and the fact that his sons were made the preferred creditors does not, of itself, furnish evidence of fraud; but the relationship is a fact to be considered with the other circumstances. Sons and sons-in-law figure at every turn of the evidence. The great effort on the part of the vendor seems to have been to get enough out of his property to pay off these favored persons, and there is some ground for making the deduction that the late purchases made by Lederer on time were made with a fixed purpose of never paying for the goods so purchased. In our opinion there is evidence of an intended fraud on the part of Lederer.

2. Nor do we agree to the proposition that there is no evidence tending to show notice to plaintiff of the intended fraud. It may be inferred from the evidence that the price paid by the plaintiff for the goods was less than their real value. The transaction was one entirely out of the usual course of business of the vendor, and this the plaintiff well knew. The plaintiff's agents were very cautious to make full inquiry as to whether the vendor had good title, and to that end interrogated his wife, but made no inquiry as to his indebtedness. On this subject there was a seeming studied silence. Direct and positive evidence of notice or knowledge by the vendee of the intended fraud is not required. Such notice or knowledge may be inferred from the circumstances. All the circumstances considered there is evidence which justified the court in submitting the question of good faith on the part of the purchaser to the jury, as a question of fact.

3. The court, at the request of the defendant, instructed the jury that if the transfer of the property from Lederer to plaintiff was made by Lederer with intent to hinder, delay or defraud his creditors, and the plaintiff "had knowledge of facts and circumstances from which such fraudulent intent might reasonably and naturally be inferred by an ordinarily cautious person, then said transfer of said property to the plaintiff is fraudulent and void, and the jury should find for defendant."

The court gave other instructions of its own motion, which are to the following effect: That if the vendee had knowledge of facts and circumstances sufficient to put a man of ordinary prudence upon inquiry touching the vendor's intention, and failed to make such inquiry; that such inquiry, if made, would have disclosed an intent of the vendor to defraud his creditors, then the sale was fraudulent on the part of the vendee, even though he paid a valuable consideration for the goods and had no actual knowledge of the intent of the vendor to defraud his creditors.

There is no question of constructive fraud in this case. The sale of the goods is attacked on the ground that it was made with intent to hinder, delay or defraud the creditors of the vendor, and, therefore, within the second section of the statute concerning fraudulent conveyances. That statute does not apply to conveyances of property, real or personal, where the vendee is a *bona fide* purchaser for value. As the plaintiff paid a valuable consideration and took immediate possession, it devolved upon the defendant to show that plaintiff was not a *bona fide* purchaser. In other words, to defeat the sale, defendant must show that it was made by the vendor to hinder, delay or defraud his creditors, and that the vendee in some way participated in the intended fraud. By the instructions given the vendee's participation is placed on the ground alone that he purchased with notice or knowledge of the fraudulent purposes of the

vendor. These instructions do not, in terms, submit this question to the jury, but charge him with constructive notice or knowledge, if he knew of facts which would put a prudent person upon inquiry and lead to a discovery of the fraud. Such facts are made equivalent to notice or knowledge. Such is the law in many courts, as will be seen from the authorities cited by respondent. It is the favorite doctrine of some of the text-writers. Wait on Fraud. Con. [2 Ed.] sec. 379 ; Bump on Fraud. Con. [3 Ed.] 494.

This court, the respondent contends, has adopted the same rule ; and in support of the claim we are cited to *Rupe v. Alkire*, 77 Mo. 742. In that case we said a refused instruction should have been given, which concluded with these words : "And if the jury believe from the evidence that sufficient knowledge was obtained by the plaintiff to put him upon his inquiry, then the jury have the right to infer that the plaintiff had knowledge of the fraudulent character of the transaction, if they further find it was in fact fraudulent." This instruction, which we said should have been given in that case, furnishes no precedent for the instruction given by the court in the case in hand. It is one thing to say knowledge may be inferred from facts and circumstances sufficient to put a person upon inquiry, and that is the effect of the refused instruction in that case ; but it is a different thing to say such circumstances are, as a matter of law, knowledge. There is no element of constructive notice in the refused instruction in the *Rupe-Alkire case*. It is left to the jury to find the fact as to whether the purchaser had knowledge of the fraudulent character of the transaction, while in the case in hand the designated facts are declared to be notice or knowledge, and that, too, without any regard as to what the actual fact may have been. Indeed, this court, in substance, said in *State ex rel. v. Merritt*, 70 Mo. 275, that it was not the duty of every purchaser of goods to inquire into the motives of

the vendor for making the sale; for such a rule would hamper the transfer of personal property to an extent which would be detrimental to commerce and subversive of the policy which encourages a free and untrammeled traffic in such property.

The very question now under consideration came before the court of appeals in *Parker v. Conner*, 93 N. Y. 118. That was a suit to recover damages for an alleged unlawful seizure and sale of personal property which the plaintiff had purchased from Halloran. The question was whether the sale to plaintiff was one made in fraud of creditors. The trial court instructed the jury that facts and circumstances sufficient to put a prudent person upon inquiry constituted notice of the fraud. The conclusion of the court of appeals is expressed in these words: "We think that in cases like the present, where an intent to defraud creditors is alleged, the question to be submitted to the jury should be whether the vendee did in fact know, or believe, that the vendor intended to defraud his creditors, not whether he was negligent in failing to discover the fraudulent intent, and that, on general principles, independently of the statute, the same rules are applicable in such cases as are applied for the purpose of determining the *bona fides* of a holder of commercial paper." The same doctrine is asserted in *Coolidge v. Heneky*, 11 Or. 327; *Lyons v. Leahy*, 15 Or. 8, and in *Carroll v. Hayward*, 124 Mass. 120.

The court in *Knower v. Cadden Clothing Co.*, 57 Conn. 202, 221, when speaking upon the same question, said: "We have made these references to the decisions of this court for the purpose of showing that in all cases where the title of a vendee has been attacked because of the intent on the part of the vendor to defraud his creditors by the transfer, those making the attack have been required to assume the burden of proving that the vendee had actual knowledge of, and participated in, the fraud; that is, that he had an intent to commit a

fraud ; this to be proven as a fact, and not to be imputed by any rule of law.''   So in *Seavy v. Dearborn*, 19 N. H. 351, the court, speaking of the evidence and instruction as to the vendee's participation in an alleged fraudulent sale of goods, said :   ''The true issue presented is the question of actual knowledge.   *   *   *   The evidence required is that which shall convince a jury that the party did know the unlawful purpose.   *   *   *   The evidence required by the instructions given to the jury at the trial comes short of this.   Instead of knowledge, they were required only to find such facts as would have led an observer of common intelligence to perceive and understand the motives of Hills ; such facts being sufficient, according to the instructions, to have put the plaintiff upon inquiry, and to have charged him with knowledge.   The effect of this language was to charge the plaintiff upon a mere constructive or implied knowledge of the fraud, and was, therefore, erroneous.''

The equity rule which charges one with knowledge of fraud if he had knowledge of sufficient facts to put him upon inquiry and lead to a discovery of the fraud had the inquiry been pursued, is open to several objections when used as a guide or formula for instructing the jury in cases like the present one.   It lays out of sight and disregards the actual fact.   It measures the good faith of a confiding and unsuspecting vendee by the same standard that it does the shrewd and experienced trader.   It makes the vendee a participant in the fraudulent purposes of the vendor by constructive knowledge, while an actual intended fraud on the part of the vendor must be shown.   The doctrine of constructive notice has no just application to cases like the one in hand.   Where the vendee has paid a valuable consideration, and it is sought to avoid the sale because he had notice or knowledge of a fraudulent intent on the part of the vendor, the question to be submitted to the jury is whether he had notice or knowledge of the fraudulent purpose of the vendor, and not whether he

had knowledge of facts which would put a prudent person upon inquiry, and lead to a discovery of a fraud. This notice or knowledge need not be shown by direct and positive evidence. It may be inferred from other facts and circumstances. Facts which would put a person upon inquiry will be evidence from which the inference may be drawn, but it should be left to the jury to make the inference. Such notice or knowledge may be proved like any other fact, and it is none the less actual notice or knowledge because inferred from the *res gestæ.*

Some other questions are made in the briefs, but it is not likely they will arise on a new trial, and they are, therefore, not considered. For the error in the instructions, before pointed out, the judgment is reversed, and the cause remanded. BARCLAY, J., not sitting; the other judges concur.