Sammons v. O'Neill.

---

VALETTE K. SAMMONS, Appellant, v. JOHN P. O'NEILL, Respondent.

*Kansas City Court of Appeals, January 28, 1895.*

1. **Fraudulent Conveyances:** CREDITOR: VOLUNTEER. A creditor may purchase property from a fraudulent debtor and give his claim in payment, even though he knows the debtor's purpose in the sale and preference is to cheat other creditors; but a volunteer purchaser who knows the object of the sale is to cheat or defraud creditors will be considered a fraudulent purchaser, even though he pays full value.

2. ———: VOLUNTEER: SCIENTER. To charge a volunteer purchaser with knowledge, it is not sufficient that he may have knowledge of such facts as would put a prudent man on inquiry, though such knowledge may be considered by the jury, with other circumstances, to determine the question whether he really had actual knowledge of the fraud.

3. ———: PURCHASER: INQUIRY: INSTRUCTION. The rule that a purchaser of personal property will be charged with knowledge when he has facts reasonably sufficient to put a prudent person on inquiry, does not apply to the sale of personal property, and certain instructions set out in the opinion are approved when taken in connection with the whole charge.

4. ———: CREDIT OF PURCHASER: INSTRUCTION: SCIENTER. L. was indebted to M., besides other creditors; he sold out to S. and required S. to give the notes for the purchase money to M. *Held*, that S. is a creditor purchaser and an instruction to that effect should have been given, though it told the jury that the sale was valid, even though L. intended to defraud his creditors and S. knew of such intention, unless S. intended not only to pay M.'s debt but also to assist L. in his fraud.

5. ——: ——: FRAUD V. PREFERENCE. Though the debtor's intent and purpose in preferring a creditor is often spoken of as a fraudulent intent as to other creditors, yet in point of fact, speaking with propriety, he can not have such an intent in a legal sense, since in law the purpose of giving a preference to a *bona fide* creditor will be considered *the* purpose to the exclusion of any further motive which may be given him.

6. Evidence: SALES: DECLARATIONS OF VENDOR: FRAUD. Declarations of a vendor as to title or as to manner of sale made after parting with possession in pursuance of the sale, are not admissible against the vendee; and, while they may show the fraud of the vendor, they should be confined strictly to that object.

7. ——: ——: AGENT'S DECLARATIONS: RES GESTÆ. The declarations of an agent merely assisting a vendee in a purchase made several days after the completion of the sale, are inadmissible in evidence against the vendee and do not form a part of the *res gestæ*, although at the time made the agent was, in the absence of the vendee, in possession of the purchased chattels.

8. Fraudulent Conveyances: FRAUD: VALUE RECEIVED: PREFERENCE. Various instructions relating to fraud, value received, and the knowledge of preferred creditor, are considered, and suggestions made in reference thereto.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

REVERSED AND REMANDED.

*Brumback & Brumback* for appellant.

(1) It was error to tell the jury, by instruction 6, as modified, that the defendant had the burden of proving fraud only "as against the Lounge Company." It had the burden on the whole case, and as against every one concerned therein. *State v. Mason*, 96 Mo. 559; *Albert v. Besel*, 88 Mo. 150; *Martin v. Fox*, 40 Mo. App. 664; *State v. Hope*, 102 Mo. 410. (2) The court, by refusing to give either instructions 7 or 8, left the jury without definition of what "knowledge on Sammons' part" legally meant. By refusing the above and by giving prominence to "knowledge sufficient to put him

on inquiry," in instruction 2, and by making either "knowledge" or "notice" in instruction 3, conclusively avoid the sale, the court convinced the jury that something less than an actual understanding of the purpose of the Lounge Company was sufficient to constitute "knowledge," whereas the contrary is the law, and nothing less than a thorough understanding of the purpose of the Lounge Company could avoid the sale, even if a fraud was intended by the seller. *Von Raalte v. Harrington*, 101 Mo. 602; *State v. Mason*, 112 Mo. 374; *Carroll v. Hayward*, 124 Mass. 120; *State v. Merritt*, 70 Mo. 275. (3) Instruction 4 declared that if Lounge Company owed J. T. Miller and he took Sammons' notes in payment, then the assumption of the debt by Sammons was equivalent to cash and question of transfer of notes was immaterial. This was law, and should have been given. Tiedeman's Equity Jurisprudence, sec. 55; Pomeroy's Equity Jurisprudence, sec. 751; *Shoe Co. v. Rudy*, 53 Mo. App. 196; *Drey v. Doyle*, 99 Mo. 459; 16 Am. and Eng. Encyclopedia of Law Novation, pp. 865, 876, 880; *Abbott v. Johnson*, 47 Wis. 239; *Edgell v. Tucker*, 40 Mo. 523. (4) If the Lounge Company owed J. T. Miller, and he took the notes in payment, then the whole transaction was a preference of a creditor, and Sammons must not only have known of intent of Lounge Company but also have himself intended to assist the fraudulent intent, and instruction 1 should have been given. *Sexton v. Anderson*, 95 Mo. 373; *Shoe Co. v. Rudy, supra; Claflin v. Sylvester*, 99 Mo. 276; *Albert v. Besel, supra; Adler v. Anderson*, 42 Mo. App. 189. (5) The court erred in refusing instruction 9 (record p. 50) in modifying it by striking out any reference to negligence and giving it so, instruction 9 (record p. 56). In regard to ninety and one hundred and twenty day note there was not shown any knowl-

edge by purchaser of invalidating facts, nor even circumstances from which it might have been inferred, and, the burden of showing this being on the defendant, it was error to refuse peremptory instructions 12 and 13 (record pp. 51, 52). *Jennings v. Todd*, 118 Mo. 296; *Mayes v. Robinson*, 93 Mo. 122; *Hamilton v. Marks*, 63 Mo. 178; Tiedeman on Commercial Paper, sec. 303; *Hamilton v. Vought*, 34 N. J. L. 187; *Bank v. Sargent*, 27 Atl. Rep. 192. (6) Fenner's declaration being those of an agent made after the transaction was completed were not admissible.. Greenleaf on Evidence, secs. 113, 114; Mechem on Agency, secs. 714, 715; 21 Am. and Eng. Encyclopedia of Law, title Res Gestae, p. 108; *Rogers v. McCune*, 19 Mo. 557; *McDermott v. Railroad*, 73 Mo. 516; *Aldridge v. Midland & Co.*, 78 Mo. 559; *Scoville v. Glassner*, 79 Mo. 449; *Bergman v. Railroad*, 104 Mo. 77; *Arms Co. v. McCrery*, 116 U. S. 161; *Goetz v. Bank*, 119 U. S. 551; *Forwarding Co. v. Ins. Co.* 29 Pac. Rep. 826; *Hoover v. Cary*, 53 N. W. Rep. 415; *Brown v. Weldon*, 27 Mo. App. 251; *Harper v. Railroad*, 47 Mo. 567; *Carter v. State*, 36 Neb. 481, s. c., 54 N. W. Rep. 853; *Winton v. Meeker*, 25 Conn. 456; *Lane v. Bryant*, 9 Gray, 245; *Church v. Ins. Co.*, 28 N. Y. 153. (7) The declarations of George Miller, one of the vendors, made long after the transaction was closed; were inadmissible. *Meredith v. Wilkinson*, 31 Mo. App. 1; *Blancjour v. Tutt*, 32 Mo. 576; *Iron Co. v. Evans*, 27 Mo. 552; *Weinrich v. Porter*, 47 Mo. 293; *Stewart v. Thomas*, 35 Mo. 202; *Sparks v. Brown*, 46 Mo. App. 529. (8) Declarations of J. C. Miller and J. T. Miller, who were merely witnesses in the case, were inadmissible, and were not admissible to impeach, for their attention was not called to alleged statements. *Fanny v. State*, 6 Mo. 122; 1 Greenleaf on Evidence, sec. 462.

*Ashley & Gilbert* and *Denton Dunn* for respondent.

(1) The sixth instruction asked by the plaintiff was properly modified, as in its original form it was not applicable to the facts of this case. *Hyde v. Book & News Co.,* 32 Mo. App. 301; *McKinney v. Guhman,* 38 Mo. App. 348. (2) Plaintiff's instructions 7 and 8 were manifestly incorrect, and properly refused. *Van Raalte v. Harrington,* 101 Mo. 613; *Rupe v. Alkire,* 77 Mo. 644; *Edwards v. Thomas,* 66 Mo. 484 and 485; *Mason v. Bank,* 16 Mo. App. 277. (3) The fourth instruction was properly refused, because it left out of view the question of the participation of J. T. Miller in the Lounge Company's fraud, of which there was ample evidence. *Alberger v. White,* 117 Mo. 363, *et seq.* (4) Plaintiff's instruction 1 was an attempt to bolster Sammons into the position of a creditor, by requiring proof of participation, and was therefore properly refused. *Albert v. Besel,* 88 Mo. 150. (5) The second and third instructions of plaintiff were properly modified by the court to harmonize them with defendant's instruction 5, which correctly stated the law. *Arnholt v. Hartwig,* 73 Mo. 485; *Greenlee v. Marquis,* 49 Mo. App. 290; *Cheek v. Waldron,* 39 Mo. App. 21, and authorities there cited; *Dougherty v. Cooper,* 77 Mo. 528; *Young v. Kellar,* 94 Mo. 591. (6) As to number 9, a careful reading of the instruction as asked and as given would clearly show that not only is 9 as asked not the law, but 9 as given was more favorable to appellant than 9 as asked. This is the settled law in Missouri. *Edwards v. Thomas,* 66 Mo. 483 and especially 485, middle; *Johnson v. McMuray,* 72 Mo. 282; *Henry v. Sneed,* 99 Mo. 407, especially 423; *Rupe v. Alkire, supra; Van Raalte v. Harrington, supra.* Appellee has no need to disturb the law as settled in *Hamilton v. Marks,* 63 Mo. 178. (7)

The testimony as to the acts and declarations of Fenner on July 27 and 31 were clearly competent and properly admitted. Fenner was at the time Sammon's agent, in full charge of his business, in possession of the part of the Lounge Company's goods that had already been delivered. *Bergman v. Railroad*, 104 Mo. 77; *Gilmour v. Heinze*, 19 S. W. Rep. (Texas), 1075; *Updyke v. Wheeler*, 37 Mo. App. 680; *Edwards v. Thomas*, 66 Mo. 486, *et seq*; *Costigan v. Trans. Co.*, 38 Mo. App. 219, especially p. 227; *Baker v. Shaw*, 35 Mo. App. 611; *Brown v. Welden*, 27 Mo. App. 261; *Leachy v. Railroad*, 97 Mo. 165. (8) At the time the declarations of George Miller were made, the Miller note had not been paid by Sammons, and there were still unity of action between Sammons and the Millers. Therefore the declarations were admissible. *State v. Durant*, 53 Mo. App. 500; *Rimel v. Hays*, 32 Mo. App. 177; *Charles v. Railroad*, 58 Mo. 461; *Gray v. Packet Co.*, 64 Mo. 49; *Young v. Hudson*, 99 Mo. 102; *Baker v. Shaw*, 35 Mo. App. 612.

ELLISON, J.—This is an action of replevin wherein defendant had judgment in the trial court.

The defendant is the sheriff of Jackson county and as such seized the goods on writs of attachment, as being the property of the Kansas City Lounge Company, said writs having been sued out by creditors of said Lounge Company. The goods were taken from the possession of plaintiff, who claims to be the owner by purchase from the Lounge Company. The sale to plaintiff is attacked for alleged fraud. There was evidence tending to prove that the Lounge Company made the conveyance to plaintiff for the purpose of cheating their creditors, and that plaintiff participated in that purpose. On the part of plaintiff, there was evidence tending to prove that he was not guilty of fraud, and that he made the purchase without knowl-

edge of any fraudulent design on the part of the Lounge Company. The plaintiff paid for the goods by executing his three several negotiable promissory notes, making them payable, at the request of the company, to one J. T. Miller; and there was evidence tending to prove that Miller was a creditor of the company for a sum greater than the notes. The evidence further tended to show that Miller accepted these notes aggregating $720 as a payment of that sum on what the company was owing him.

Several instructions were asked by the parties. All of those asked by the plaintiff were refused, except one as to the form of the verdict, some of them refused absolutely and the others partially being given after making material alterations therein. Those asked by defendant were all given. Declarations of plaintiff's agent and of parties composing the Lounge Company were admitted over the objection of plaintiff.

There is a distinction to be made between a creditor purchaser from a fraudulent debtor and a volunteer purchaser from such debtor. The creditor may purchase property of such debtor and give his claim against the debtor in payment therefor, even though he knows the debtor's purpose in making the sale and giving him such preference is to cheat his other creditors. But, if the volunteer purchaser knows that the object of the sale is to cheat or defraud creditors, his purchase will be considered a fraudulent purchase, even though he pays full value. As we shall see further on, this case involves both classes of purchasers.

Considering plaintiff first as a volunteer purchaser, and conceding the fraudulent purpose of the Lounge Company in making the sale, it is necessary, in order to invalidate the sale, that plaintiff should have had knowledge of the company's purpose. It is not sufficient that he may have had knowledge of such facts as would

have put a prudent man on inquiry, which inquiry would have discovered the fraud, but the fact that he had such knowledge may be given in evidence and may be considered by the jury, with the other facts and circumstances in the case, in determining the question whether he really had actual knowledge of the fraud on the part of the Lounge Company. *Van Raalte v. Harrington*, 101 Mo. 602; *State to use v. Mason*, 112 Mo. 374; *Carroll v. Hayward*, 124 Mass. 120.

There is a class of cases where knowledge of facts sufficient to put a prudent man on inquiry is considered and acted upon as tantamount to knowledge of the fraud itself. This arises from the fact that from the nature of such cases it became the duty of the person possessed of such initiatory knowledge, to pursue the inquiry and ascertain the ultimate fact. If he did pursue the inquiry, he learned the fact; if he did not, he was guilty of *laches* and will be forced to suffer the consequences of his neglect. But this rule will not apply to the sale of personal property—it could not well apply without hampering the barter and sale of such property to an embarrassing extent. It is not usual for the purchaser to seek out the motive of the seller. A purchaser, though he is possessed of information which would put a prudent man on inquiry, can neglect to make the inquiry and yet be safe in his purchase. But the fact that he had such knowledge as would have excited the inquiry of a prudent man, may be considered by the jury, when they come to determine the question whether he did have actual knowledge of the fraud. The instructions given for defendant, with an exception to be noted further on, were, therefore, properly given.

But instructions numbers 7 and 8, offered by plaintiff, in support of his theory on this branch of the case, were refused, and, we think, properly. Number 7

declared that plaintiff was not bound to investigate as to the reasons which may have moved the Lounge Company to make the sale, and that he should not be charged with a knowledge of facts not known to him, although, if he had investigated, he would have found them out. Number 8 directed the jury, that in passing on the question whether the jury had knowledge of the fraudulent object and intention of the Lounge Company, the matter to be settled was not whether he was a careful or careless man, but whether he, in fact, understood the purpose of the company; that the law did not distinguish between a careless and careful purchaser. These instructions, in view of what we have already said, should have been given. We do not wish to be understood as stating that the jury, in determining the ultimate fact of actual knowledge on the part of a purchaser, may not consider the acts and conduct of the purchaser as the evidence develops them. We do not consider that instruction number 8, as it is written, especially when taken in connection with the other instructions and the evidence to which it applies, could have been so understood by the jury.

2. We will now discuss the question whether plaintiff should be considered as though a creditor purchaser—not that he was himself a creditor of the Lounge Company, but whether he virtually occupied that relation to the transaction. As before stated, there was evidence tending to show that the Lounge Company owed J. T. Miller a sum of money greater than the sum plaintiff was to pay for the property in controversy, and that the Lounge Company directed plaintiff to execute the notes, which were agreed to be executed for the purchase price, to Miller, he agreeing to take the notes as a payment of that amount of his debt. As applicable to this branch of the evidence, plaintiff offered his instruction numbered 1, which the

court refused. The instruction declared that if the Lounge Company owed Miller a sum larger than the notes given by plaintiff to Miller, that Miller had a right to obtain a part payment of his debt to the exclusion of other creditors, and that if plaintiff executed the notes to Miller at the request of the company, and Miller accepted them as a payment of that much of his claim against the company, then the sale was valid, even though the Lounge Company intended to cheat and defraud other creditors, and plaintiff at the time knew of such intention, and the jury should find for the plaintiff, unless they believe that plaintiff, besides knowing of such intention, also intended by his action, not only to pay Miller's debt, but also to aid and assist the Lounge Company in defrauding their other creditors. In our opinion, the instruction should have been given. The effect of the transaction, on this hypothesis, was nothing more than a preference of creditors, which, as is well known, can be had in this state. The mode of the preference here is indirect and uncommon, but yet certain. If the sale of the property to plaintiff was for a lawful purpose, and was the means whereby a lawful purpose was carried out, it would appear to be a flat contradiction to term it unlawful or fraudulent. The law upholds a payment to a creditor selected by the debtor, and fully justifies the creditor in seeking to be selected. And, since the debtor is executing a lawful purpose and accomplishing a lawful object in behalf of a creditor with full right to accept the preference, the law will not interfere with, or inquire into, the motive which may prompt the lawful act. This is but one phase of a general rule of law which denies punishment for unlawful intentions which are not carried forward into wrongful acts. An unlawful intention, without connection with an unlawful act, has in it no element which can be redressed.

A sale which the law will annul for fraud is not one made where the proceeds are paid to a creditor, but it is where they are retained for the use of the seller. The case of *Singer v. Goldenburg*, 17 Mo. App. 549, decided by this court in 1885, is applicable to this question. In that case there was evidence tending to show that Goldenburg, being insolvent, sold his stock of goods to one Franke for $2,000, in money, and Franke's notes for the balance of the purchase price. Among other creditors of Goldenburg was Nusbaum, to whom Goldenburg owed more than the cash and notes he obtained from Franke. Goldenburg, in pursuance of a design, at time of sale, turned over the cash to Nusbaum and indorsed to him the notes as a payment on the latter's claim. The opinion, delivered for the court by Judge HALL, upholds the validity of the transaction, as a preference of a creditor, notwithstanding Franke knew the purpose of Goldenburg was to make the preference, and that the purpose of Nusbaum was to obtain the preference. It is true that no reference is made in that case to a knowledge on the part of Franke, that Goldenburg, by making the preference of Nusbaum, intended thereby to defraud his other creditors. But, as we have already seen, that would make no difference. Though a creditor may know that his debtor is giving him a preference with a fraudulent intent as to other creditors, and though the creditor knows that the result of the preference will be to hinder and delay other creditors, yet if he does not himself participate in the fraud of his debtor, and confines himself to accomplishing his own protection, the preference will be upheld. *Sexton v. Anderson*, 95 Mo. 379; *Shelly v. Boothe*, 73 Mo. 74.

Though the debtor's intent and purpose in preferring a creditor is often spoken of, and referred to, as a fraudulent intent as to other creditors, yet, in

point of fact, speaking with propriety, he can not have such intent in a legal sense, since, in law, a purpose of giving a preference to a *bona fide* creditor will be considered *the* purpose, to the exclusion of any further motive which may govern him.

The case of *Gregory v. Harrington*, 33 Vt. 246, is a stronger case than that presented in plaintiff's refused instruction. In that case the debtor sold his store to a purchaser for the amount of a debt he owed the purchaser and the purchaser's four several promissory notes. These notes were transferred by the debtor to some creditors whom he desired to prefer. The debtor's design was to put his property beyond the reach of other creditors. The court held the sale valid, and in the course of the opinion said:

"In this case, if the principal debtor had transferred the property itself to the same persons to whom he transferred the notes he took for it, and for the same purpose, no person would claim that he had not a perfect legal right to do so; or, if he had sold the property and taken the money for it, and had applied the money in the same manner, it would not have been fraudulent. The purpose was not to keep his property away from his creditors, but to pay it to his creditors, he exercising his legal right to prefer such as he chose. Fraud does not consist in transferring property with a view to prefer one creditor to another, but in transferring property with the intent to prefer one's self to all his creditors."

In *Tennent Shoe Co. v. Rudy*, 53 Mo. App. 196, it was held that where a person purchased goods of his debtor, by surrendering his own claim as part of the purchase price and obligating himself to pay other creditors up to the amount of the balance of the purchase price, it was a valid transaction and was governed by the law relating to preference of creditors.

It follows from the foregoing, that plaintiff's refused instruction number 4 should also have been given. And it is in this connection that the objection to defendant's instructions which we have referred to occurs. They should be qualified by asserting Miller's right to obtain a preference, if he had a *bona fide* claim against the Lounge Company.

3. Evidence was admitted, so far as appears, for the general purposes of defendant's case, showing the declarations made by the members of the Lounge Company several months after the sale, not in the presence of plaintiff, which tended to show the sale to be fraudulent. This, without being confined to the purpose of showing fraud on the part of the Lounge Company, was error against this plaintiff. Declarations of the vendor as to title, or as to manner of sale, made after having parted with the possession in pursuance of the sale, are not admissible against the vendee. These declarations were proper as tending to show fraud on the part of the Lounge Company, and in being called out by counsel, they should have stated the purpose. The court properly confined the object of the evidence by an instruction.

4. A part of the negotiation leading up to the sale was made by plaintiff's agent, Fenner. He was not, so far as appears, plaintiff's general agent for all purposes. He was plaintiff's foreman in his factory. It does not appear that he was plaintiff's general purchasing agent. He merely assisted plaintiff in this purchase—a purchase, too, which defendant contends was an unusual one. This agent's declarations, made several days after the sale was completed and the transaction ended, were admitted. This was error. These declarations were no part of the *res gestæ.* The transaction in which the agent had a part was not then depending. The sale being completed, the fact

that the notes given for the purchase price were not negotiated by the holder, at the time of these declarations, can have no bearing on the questions. Mechem on Agency, sec. 714; *Winchester v. McCreary*, 116 U. S. 161; *Goetz v. Bank*, 119 U. S. 551. Neither does the fact that after the sale plaintiff had occasion to go to the state of Colorado and left Fenner in charge of his business and thus in possession of this property, affect the question. Defendant seeks to draw the conclusion from this fact that the declarations made while in such possession were a part of the *res gestæ*. It might very properly have been a part of the *res gestæ* had the declarations related to the possession, or to some question as to the right of possession. But the *res gestæ* of the sale were not then pending; the sale was a past transaction—an accomplished fact. If defendant's contention was correct, the *res gestæ* of a sale might be prolonged for years after it had become consummated.

Instruction number 9 for defendant, should be given as asked, with the proviso that the jury are at liberty to consider the action of such purchasers, in determining the question whether they did in fact know of the fraud.

Under the circumstances of this case, as they appear in evidence, it would have been proper to have given plaintiff's refused instruction number 10, declaring that the words "value received," regarding the purchases of the notes, as used in other instructions, did not necessarily mean the full face value. Such is the law and the instruction should have been given.

Instruction number 6 should have been given as asked by plaintiff. The modifying words added therein, are too apt to leave the jury to understand that fraud need only be proved against the Lounge

Company, whereas plaintiff must be connected with it, as has been already stated.

Instructions 12 and 13, offered by plaintiff, were properly refused, since the ruling in this state, under similar circumstances, is that the question is for the jury.

It seems that, under the rulings had in this state, the modification in plaintiff's instructions numbers 2 and 3 were properly made. Defendant's instruction number 5, on the same subject, should be so framed as not to exclude the hypothesis of Miller being a preferred creditor, in keeping with what has been said herein on that subject.

The judgment will be reversed and the cause remanded. All concur.

### ON MOTION FOR REHEARING.

ELLISON, J.—We have already held that a volunteer purchaser from a fraudulent vendor may obtain a valid title, even though he has actual knowledge of the fraudulent design of the vendor, if he pays the purchase price by direction of the vendor to a *bona fide* creditor of the vendor; since such a transaction merely amounts to preferring a creditor. But although the party to whom he paid the purchase price was a *bona fide* creditor, yet, if he was participating in the vendor's effort to cheat other creditors, *and the purchaser knew he was so participating*, it would disentitle the purchaser to the protection of the rule as to preference of creditors, and his title would be invalid. If, therefore, on retrial, there is any evidence tending to show that Miller went beyond the purpose of getting a payment on his debt and participated in the fraud of the Lounge Company, and that plaintiff knew it, then plaintiff's instructions which are applicable should be

qualified by such hypothesis, or an independent instruction to that effect should be given.

Motion overruled. The other judges concur.