KURTZ v. TROLL et al. Appellants.

Division Two, June 9, 1903.

1. **Fraudulent Sales:** VOLUNTARY PURCHASER: KNOWLEDGE OF FRAUD: PARTICIPATION IN FRAUD. A volunteer purchaser who gets title to goods conveyed to him to hinder, delay or defraud the vendor's creditors, can acquire no right to the property against such creditors, if he either knew of or participated in the purpose of the vendor in making the sale. In such case the fact that the volunteer purchaser paid full value for the goods does not lessen his participation in the fraud.

2. ————: ————: AFTER-ACQUIRED KNOWLEDGE. A volunteer purchaser of goods acquires no title thereto, if, after such sale was made to him, but before payment of the purchase price, he learned that the creditor's purpose in making the sale was to defraud his creditors, and failed to withhold payment, provided his obligation to pay had not become so fixed by a transfer of negotiable paper evidencing it that he could not legally resist its enforcement.

3. ————: ————: ————: TRANSFER OF PAYMENT NOTES TO BONA FIDE CREDITORS. The seller of goods to a volunteer purchaser received payment in negotiable notes, and transferred them to his brother in payment of a bona fide debt, and the court instructed the jury in an attachment suit for the goods by his other creditors, that the sale was valid, notwithstanding it was made to defraud the vendor's creditors, and notwithstanding the vendee knew of

and participated in such purpose, unless it further appeared that the brother (the transferee of the notes) knew of and participated in such purpose, and that this latter fact was known to the vendee of the goods. *Held*, error, since if the vendee knew of the vendor's fraudulent purpose, the sale was, as to other creditors, voidable, even though the amount of the vendee's notes given in payment thereof equaled the value of the goods. Nor was that voidable sale made valid by the fact that the vendor transferred the notes to another bona fide creditor.

## Transferred from St. Louis Court of Appeals.

CIRCUIT COURT JUDGMENT REVERSED AND REMANDED.

*F. A. Wind* and *Johnson, Houts, Marlatt & Hawes* for appellants.

(1) Even if the debt from Wendell Schorle to his brother, Leopold, was a valid one, and even if Wendell Schorle transferred the Kurtz notes in payment of, or security for, such debt, yet, if Wendell Schorle further intended, in making the sale to Kurtz, to hinder, delay or defraud his other creditors, and if Kurtz participated in such intent, then the sale as to Kurtz was void, although Leopold Schorle neither knew of nor participated in such fraudulent intent. State ex rel. v. Purcell, 131 Mo. 318; Baker v. Harvey, 133 Mo. 653; Ross v. Ashton, 73 Mo. App. 254. (2) A bona fide creditor in securing a preference from his insolvent debtor, can not participate in the fraudulent intent of such debtor to hinder, delay or defraud the other creditors. Farwell & Co. v. Meyer & Wolf, 67 Mo. App. 566; Nat. Tube Works v. Ring R. & I. Machine Co., 118 Mo. 365. (3) Much less can a volunteer purchaser from a fraudulent debtor participate in the fraud and retain the property purchased against a creditor. Esselbruegge Mer. Co. v. Troll, 79 Mo. App. 562; Monarch Rubber Co. v. Bunn, 78 Mo. App. 55. (4) The sale might be void as to Kurtz though valid as to Leopold Schorle, the holder of the notes and mortgage. Beam v. Bennett, 51 Mich. 148; Murphy v. Briggs, 89 N. Y. 446; Bank v. Cummin,

39 N. J. Eq. 577; Brooks v. Wilson, 53 Hun (N. Y.) 173. (5) Kurtz has never paid a cent on his notes, and they have never been in the hands of an innocent holder; and, therefore, notice to him, at any time, of the participation of Leopold Schorle in the fraudulent intent of Wendell Schorle, would have prevented his occupying the position of an innocent purchaser, and the instructions should not have limited the effect of such notice to the time prior to his executing and delivering the notes. Fluegel v. Henschel, 74 N. W. 996; Arnholt v. Hartwig, 73 Mo. 485; Cheek v. Waldron, 39 Mo. App. 21; Greenlee v. Marquis, 49 Mo. App. 290; Westmore v. Wood, 62 Mo. App. 265; Dougherty v. Cooper, 77 Mo. 528; Young v. Kellar, 94 Mo. 581. (6) Defendants Garrels, Hammel and Goerner can not be held liable for taking this property merely because they executed the attachment bond. Butler v. Borders, 6 Blackf. 160; Clay v. Sandefer, 51 Ky. 334; Howel v. Caryl, 50 Mo. App. 450; Vaughn v. Fisher, 32 Mo. App. 29; Michels v. Stork, 44 Mich. 2; 3 Am. and Eng. Ency. Law (2 Ed.), 246; Drake on Attachments, sec. 196.

*L. Frank Ottofy* for respondent.

(1) The plaintiff obtained a valid title even though he knew of Wendell Schorle's fraudulent intent, because the notes paid a bona fide debt to Leopold Schorle, the evidence showing that plaintiff did not know of any participation on the part of Leopold. The instructions properly declared the law. Sammons v. O'Neil, 60 Mo. App. 537; Dougherty v. Cooper, 77 Mo. 533. (2) There is no evidence in this case that Kurtz knew of any intention to defraud on the part of Wendell or Leopold Schorle. Knowledge on the part of Kurtz was a question of fact for the jury. Hearn v. Due, 79 Mo. App. 324; Sammons v. O'Neil, 60 Mo. App. 544. (3) Instruction 2 was properly given. The law casts upon the

vendee no duty to inquire into the motives or circumstances of his vendor. There is no evidence of any suspicious circumstances which would have put Kurtz on inquiry if he were disposed to investigate. Sammons v. O'Neil, 60 Mo. App. supra; Fluegel v. Henschel (N. D.), 74 N. W. 997; State v. Merritt, 70 Mo. 276; State to use v. Mason, 112 Mo. 380. The fact that Leopold and Wendell were brothers does not raise a presumption of fraud. Fleugel v. Henschel, supra; Farwell v. Meyer, 67 Mo. App. 574. (4) The securities in the attachment bond are liable in trespass for the conversion of the property of a third party. Peckham v. Lindell Glass Co., 9 Mo. App. 462; Kamerick v. Castleman, 29 Mo. App. 663; Welsh v. Stewart, 31 Mo. App. 385; Palmer v. Shenkel, 50 Mo. App. 576; State ex rel. v. Benedict, 51 Mo. App. 648; Hanson v. McKerrall, 57 Mo. App. 58; Adams v. Gilchrist, 63 Mo. App. 646. Those who participate in the commission of a trespass by counseling, aiding and abetting in it, are equally liable with the principal. Howell v. Caryl, 50 Mo. App. 450; Favorite v. Cottrill, 62 Mo. App. 119; Vaughn v. Fisher, 32 Mo. App. 36.

BURGESS, J.—This case was transferred to the Supreme Court by the St. Louis Court of Appeals because of the dissent of one of the judges of that court from its majority opinion. Since the case has been pending in this court the defendant Henry Troll died, and the suit has been duly revived in the name of Harry Troll, his executor.

In the St. Louis Court of Appeals, the opinion of the court was delivered by BOND, J., and it, and the dissenting opinion of Judge BIGGS, are as follows:

### MAJORITY OPINION.

"BOND, J.—This is a suit brought by the purchaser of a portion of the stock of an insolvent mer-

chant, the remainder of whose stock was assigned for the benefit of creditors. The purchaser gave a chattel mortgage on the goods to secure the price, which was nine notes of $100 each. After a credit of about $50 was put upon these notes to reduce them to the amount of the goods purchased at the agreed charge, they were indorsed without recourse by the payee to his brother, Leopold Schorle. An attachment suit was instituted by a creditor of the vendor, which was levied by defendant Troll, as sheriff, upon the said goods, which were subsequently sold and applied to a judgment on the merits, and also sustaining the attachment, which was entered upon the written offer to that effect of the attachment defendant. The present suit is against the defendant sheriff and the sureties on the attachment bond, for an alleged conversion of the goods seized under the writ of attachment. Defendants gave evidence tending to prove that the goods sued for were fraudulently conveyed by the defendant in the attachment suit, and that plaintiff purchased them with knowledge of and participancy in said fraud. This was, however, denied by plaintiff, who claimed further that his note for the purchase money had been transferred by the vendor in payment of a debt due the brother of his said vendor. It was further shown that the note evidencing this indebtedness was not surrendered nor delivered up when plaintiff's notes were assigned to the holder. It is not claimed that the market value of the goods exceeded $850. The jury returned a verdict for $1,500, of which plaintiff remitted $650, whereupon the court overruled defendants' motion for a new trial, and they perfected an appeal to this court.

"I. Upon the theory that the notes for the purchase money of the goods were to be transferred by the vendor to pay or secure his indebtedness to his brother, the court instructed the jury that the sale to plaintiff was valid, notwithstanding it was made for the purpose of hindering, delaying or defrauding the creditors of the

vendor, and notwithstanding the further fact that the plaintiff (the vendee) knew of and participated in such purpose and intent, unless it further appeared that the transferree of the notes also knew of and participated in such purpose and intent, and that this latter fact was also known to plaintiff. It is not believed this view of the law can be sustained. The difference in the legal status of a volunteer purchaser and the creditor of an insolvent vendor in a sale or conveyance made by him to defraud his creditors has been so often and so clearly drawn by the decisions in this State and elsewhere that it needs only to be stated to be thoroughly accepted without a citation of precedents. In the case of a sale or conveyance of goods with a fraudulent design on the part of the vendor, a creditor receiving the same in payment or security of a bona fide indebtedness at a reasonable value or price will not lose the preference thus given him, although he is aware that the transaction itself hinders or delays other creditors in seeking redress against said goods, and that such was the purpose of the debtor, provided the creditor does not further participate in such purpose than by the taking payment of his claim or a proper security therefor. On the other hand, a volunteer purchaser who gets title to goods sold or conveyed to hinder, delay or defraud creditors of the vendor in the enforcement of their claims, can acquire no right to the property against such creditors, if he either knew of, or participated in the purpose of his vendor when the transaction was consummated, and this, too, irrespective of the fact that he may have paid full value for the goods. Nor could he acquire a valid title, if, after such a sale, but before payment of the price, he learned of said fraud and failed to withhold payment, provided his obligation to pay had not become so fixed by a transfer of negotiable paper evidencing it or otherwise, that he could not legally resist its enforcement. It needs only a simple application of these principles to settle the rights of the parties to this

suit.    The hypothesis upon which the court instructed
the jury presupposed proof of fraud by the seller and
participancy therein by the buyer, but no proof of
fraud by the third party, a creditor of the seller, to
whom the notes for the price were assigned in payment
or security of a demand against the seller.    It follows
that the transaction as far as the seller and purchaser
were concerned, was in direct defiance of the statute
forbidding sales to hinder, delay or defraud creditors.
As to these two parties there was a shifting of the title
to the goods with intent and purpose on the part of both,
to put the property beyond the reach of the creditors'
process.    Such a transaction was necessarily voidable
at the instance of creditors, irrespective of the payment
by the buyer of the full value of the goods, and also
irrespective of the fact that the vendor assigned the
notes which he received for the price of the goods to
the holder of a valid demand against himself.    As to
the latter party it is true that he could not be compelled
to account to the other creditors as trustees for their
benefit, except upon proof of participancy in the fraud
of the vendor of the goods.    But this exemption on his
part does not extend to the other two parties, the buyer
and seller of the goods. As to the seller, fraud sufficing
to sustain an attachment of his property was shown,
when proof was made of his intent to fraudulently dis-
pose of any part thereof.    [Bank v. Lumber Company,
59 Mo. App. 317; Bank v. Powers, 134 Mo. loc. cit. 447-
448; Bank v. Russey, 74 Mo. App. 651; Glacier v.
Walker, 69 Mo. App. 288.]    Now, when this intent was
communicated to a stranger, who at once intentionally
aided and assisted in its consummation, did he not
thereby necessarily subject the property so taken to the
same processes to which it would have been exposed if
it had been found still in the hands of the fraudulent
vendor?    In other words, how did the vendee acquire
any higher rights to the property than the fraudulent
vendor, if both cherished the same fraudulent purpose

in the transfer of the title? The only answer to these questions is that the property was equally open to the suit of a creditor, whether in the hands of a fraudulent vendor or fraudulent vendee. Any other view would set at naught the statutes conditioning the validity of sales of property, as against creditors, upon good faith on the part of the purchaser, as well as the payment of a valuable consideration. [R. S. 1899, sec. 3398; Van Raalte v. Harrington, 101 Mo. 609.]

"2. Neither does the fact that the transferee of the price of the goods could hold it as a valid preference of his debt under certain circumstances, inure to the benefit of the volunteer purchaser. The only theory upon which the creditor could retain for himself, money so received, is that it was taken in payment or security of a bona fide demand, and that he did not further participate in the fraud of the debtor, for if he did this, he could not retain the money against the suit of other creditors. Now, the assumption of the instruction in this case is, that the volunteer purchaser actually shared in the fraud of the debtor. If this had been done, even by the creditor, he would have been compelled to disgorge what he had received with that intent. How then can the mere outside purchaser be placed upon a more advantageous ground? It is not believed such a conclusion can be reached by any valid course of reasoning nor that it can find support in any well-considered case in this State. [Rubber Mfg. Co. v. Supply Co., 149 Mo. loc. cit. 551; McDonald & Co. v. Hoover, 142 Mo. loc. cit. 494-495, and cases cited; Hall v. Goodnight, 138 Mo. loc. cit. 587; Martin v. Estes, 132 Mo. 409; Rinehart v. Long, 95 Mo. 396; Dougherty v. Cooper, 77 Mo. loc. cit. 532; Esselbruegge Mercantile Co. v. Troll, 79 Mo. App. 558.]

"It follows that the instructions given by the learned trial judge were radically erroneous.

"Some countenance for the theory expressed by

Vol 175 mo—33

them may be found in what is said by the Kansas City Court of Appeals in Sammons v. O'Neill, 60 Mo. App. 530. But the facts in that case were unlike the facts in the one at bar. In that case, it appears that the consideration of a fraudulent sale was paid ·by the purchaser directly to a creditor of the vendor. In the case at bar, the consideration of the sale was expressed by notes executed by the purchaser directly to the vendor, who subsequently assigned them to a creditor. The two cases may be thus distinguished as to the points in judgment. It is argued, under the authority of some general remarks in that case, that the plaintiff in the case at bar only enabled his vendor to do indirectly what he would have had the lawful right to do directly by transferring the goods themselves to a creditor in payment of a bona fide demand. This argument rests upon an entire misconception of what was in fact done in the present case. In this case the evidence tends to show that the plaintiff bought the goods with a positive intent to assist the seller in defrauding his creditors. The title thus passed. The price paid was turned over by the seller to one of his creditors, who was only entitled to retain it, as he would only have been entitled to retain the goods themselves had they been given to him at their reasonable value, in payment or security of his demand, provided he did not further assist or participate in the fraudulent design of his debtor. He could retain whatever he took only in payment of his debt, whether it was goods at a fair price, or their representative in money after they had been sold. To the extent of giving his creditor the price of the goods instead of the goods themselves, the debtor might indirectly vest the creditor with a title to the price as he could have directly transferred the title to the goods themselves, and if the argument of the learned counsel for respondent had gone to this extent only, it might have had some force, but his contention does not stop at that point; he insists that the debtor was also entitled

to make a fraudulent sale to a mere purchaser, who was cognizant of that intent and actively assisted in its accomplishment, and thereby vest a valid title to the goods as against creditors, in such purchaser, provided the notes given for the price of the goods were indorsed, under an agreement with the purchaser, to one of the creditors of the vendor. This is vastly more than doing indirectly what the debtor might have directly done. It must be kept steadily in mind that the whole theory upon which the law permits a creditor to retain money or property received in payment of his demand, is not from any leniency to the debtor who uses fraudulent means to effect such payment, but only from a want of complicity in such fraud on the part of the creditor other than in receiving payment of his debt. In all such cases, fraud on the part of the debtor, if shown, entitles his other creditors to any remedy available against him. It is a necessary corollary of this proposition that a remedy available against a fraudulent debtor is equally available against any mere transferees of his title, in privity of estate with him by reason of participancy in his fraudulent designs. So in the case at bar, the general creditors of the vendor of plaintiff upon proof that he was about to fraudulently dispose of his property, might have intercepted it by attachment before the consummation of the fraud. When the fraud in question was effectuated by a transfer to plaintiff, with full knowledge and participancy therein, he certainly could acquire no higher right to the goods than was possessed by his vendor. This is but an application of the salutary rule which avoids, as creditors, a sale of their debtors' property resting upon mutual fraud of the seller and volunteer purchaser. It is the essence of this right of relief that it annuls *accomplished,* as well as *intended* frauds, irrespective of the consideration paid, and it would fail of this achievement if it stopped short of any of the guilty participants. The argument of respondent does not

meet the facts shown in this record, nor can we agree to all of the remarks expressed by the learned court in the case cited, nor are we inclined to follow anything said in that case which is opposed to the conclusions heretofore stated by us. We also experience some difficulty in reconciling the views by our learned brothers, in the case last cited, to the full recognition by them in a later case (Haase v. Nelson Distilling Company, 73 Mo. App. l. c. 58, and cases cited) of the principle, that in a conveyance in trust to pay creditors, fraud on the part of the grantor and trustee without any participation therein on the part of the secured creditors, will vitiate the conveyance.

"The judgment herein is reversed and the cause remanded. Judge *Bland* concurs; Judge *Biggs* dissents and expresses his views in a dissenting opinion."

### DISSENTING OPINION.

"BIGGS, J.—This case was not tried and presented (as stated in the majority opinion) upon the hypothesis that the plaintiff *participated* in the alleged fraudulent design of Wendell Schorle to hinder, delay or defraud his creditors. The theory of the appellants (as evidenced by their instructions) was that the plaintiff was a *volunteer* purchaser, and if he had *knowledge merely* of Schorle's alleged fraudulent design, the sale to him was invalid. This is shown by their instruction number five, which the circuit court modified by adding that portion in italics, to-wit:

" 'The court instructs you that, if you believe and find from the evidence, at the time of the alleged sale from Wendell Schorle to Kurtz, Wendell Schorle was insolvent and had formed the design and purpose of transferring and disposing of his property, or any part thereof, for the purpose of hindering, delaying or defrauding his creditors, and that the said sale to plaintiff Kurtz was a part of and in furtherance of said fraudulent pur-

pose and design, if any; and if you further believe and find from the evidence that before said sale was consummated, and before the nine promissory notes, made by Kurtz to Wendell Schorle, had been delivered to Leopold Schorle, Kurtz became aware of the fraudulent purpose, if any, of the said Wendell Schorle, then the court instructs you that it was the duty of plaintiff Kurtz to rescind such sale and demand the return of his notes, and your finding must be for the defendants, *provided, however, that you further find that Leopold Schorle participated in the design of Wendell Schorle to defraud his creditors, and that plaintiff knew that Leopold Schorle was so participating in such design of Wendell Schorle before plaintiff signed and delivered the notes and mortgages read in evidence.'*

"The evidence adduced by plaintiff tended to show that the purpose of the sale to plaintiff was to secure or pay the debt due to Leopold Schorle from Wendell Schorle. To accomplish this the goods were sold to plaintiff, for which he gave his notes, which Wendell immediately assigned and delivered to Leopold. This was an indirect way of preferring Leopold's debt, but it was certain and it was effectual, unless Wendell made the preference with the fraudulent intent' of hindering or delaying his creditors and the plaintiff participated therein, or Leopold was a party to a fraud, and of which plaintiff had knowledge before executing and delivering the notes. In other words, if the sale was a fair one, as above indicated, the plaintiff must be treated as a creditor purchaser. The circuit court so regarded him under the evidence, and it was authorized to do so under the decisions of this court and the Kansas City Court of Appeals in Tennent Shoe Co. v. Rudy, 53 Mo. App. 196; and Sammons v. O'Neill, 60 Mo. App. 530.

"In my opinion the decision of my associates is contrary to the decision in the cases above cited, and I,

therefore, ask that the case be certified to the Supreme Court.''

We approve the foregoing opinion of Judge Bond, and accordingly reverse the judgment and remand the cause. All of this Division concur.