H. T. SIMON–GREGORY DRY GOODS COMPANY, Appellant, v. S. V. SCHOOLEY, Defendant; DANIEL E. HERR, Respondent.

Kansas City Court of Appeals, May 4, 1896.

1. **Fraudulent Conveyances:** NOTICE TO VENDEE: INQUIRY: INSTRUCTION. Where a vendee has paid a valuable consideration and the sale is attacked on the ground of his knowledge, the question for the jury is, whether he had knowledge of the fraudulent purpose of the vendor and not whether he had knowledge of facts which would put a prudent person upon inquiry. Knowledge, however, may be inferred from such facts, but the court will not as a matter of law declare such facts knowledge; and an instruction set out in the opinion is *held* proper.

2. ———: INADEQUACY OF PRICE: EVIDENCE: INSTRUCTION. On the evidence in this case an instruction set out in the opinion in relation to the inadequacy of price is held proper.

3. ———: BONA FIDE PURCHASER: INQUIRY. An instruction declaring that a *bona fide* purchaser is not required to inquire into the motives of his vendor though good abstract law is *held* misleading on the evidence in this case for the failure to define the words, "acting in good faith."

4. ———: ———: VALUABLE CONSIDERATION. An instruction is condemned because the terms "in good faith" and "for valuable consideration" are nowhere defined and for further reason that it singles out a set of facts and ignores other material facts in the case.

5. ———: INTENT: PRIMA FACIE TITLE. An instruction telling the jury that they must find for interpleader unless plaintiff has shown interpleader's *prima facie* title is wrongful and fraudulent without defining these last terms, is *held* improper, as it should simply have said, unless they found the defendant intended to defraud, etc., his creditors and that interpleader had knowledge of such intention and participated therein.

*Appeal from the Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED AND REMANDED.

*Leslie O'Rear* and *Ellis & Cook* for plaintiff.

(1) Interpleader's instructions numbers 1, 2, 3, and 4, are erroneous in that they single out and emphasize certain specific facts to the exclusion of others, and comment on the evidence. *Meyer v. McMahan*, 50 Mo. App. 18, 23; *Weil v. Schwartz*, 21 Mo. App. 372, 382; *Noyes v. Cunningham*, 51 Mo. App. 194; *Chappell v. Allen*, 38 Mo. 213, 222; *Barr v. City*, 105 Mo. 550, 556, 557; *Jones v. Jones*, 57 Mo. 138, 142; *Forrester v. Moore*, 77 Mo. 651; *Benjamin v. Railroad*, 50 Mo. App. 602, 611; *McFadin v. Catron*, 120 Mo. 252, 274; *Railroad v. Stock Yards Co.*, 120 Mo. 541, 559; *Kendig v. Railroad*, 79 Mo. 207. (2) Interpleader's instructions numbers 2, 3, and 4 are erroneous in that they are misleading, confusing, and ambiguous. *Legg v. Johnson*, 23 Mo. App. 590, 593; *Young v. Ridenbaugh*, 67 Mo. 574, 584; *Donohoe v. Railroad*, 83 Mo. 560; *Chouteau v. Iron Works*, 83 Mo. 73, 84; *Green v. Parker*, 85 Mo. 107. (3) Interpleader's instruction number 3 is erroneous in that it lays too heavy a burden upon plaintiff. It first tells the jury that interpleader had a *prima facie*

title to the property, and then compels plaintiff to show that his title is both "wrongful and fraudulent." The question should be whether interpleader's claim of title was void, not whether wrongful; much less whether both "wrongful and fraudulent." *Potter v. McDowell*, 31 Mo. 62, 70, 74; *Bank v. Wheaton*, 8 Me. 381; *Kirby v. Ingersoll*, 1 Doug. (Mich.) 477; *Cole v. Tyler*, 65 N. Y. 77; *Mine Co. v. Grabt*, L. R. 17, Ch. D. 122; *Moore v. Woods*, 100 Ill. 451. (4) Interpleader's instruction number 3 is erroneous in using the terms *"prima facie* title" and "wrongful and fraudulent title." The meaning of these expressions should have been explained to the jury, and the jury should not have been left to guess out the meaning of the issues thus submitted. *Boogher v. Neece*, 75 Mo. 383; *Speak v. Ely & Walker*, 22 Mo. App. 122, 123; *Clarke v. Kitchen*, 52 Mo. 316, 317; *Young v. Ridenbaugh*, 67 Mo. 574, 584; *Digby v. Ins. Co.*, 3 Mo. App. 603; *Morgan v. Durfie*, 69 Mo. 469, 480; *Hayes v. Railroad*, 15 Mo. App. 584; *Stewart v. City*, 79 Mo. 603; *Dyer v. Brannock*, 2 Mo. App. 432, 441; *Fugate v. Young*, 6 Mo. 267, 273; *Carson v. Potter*, 22 Mo. App. 179, 185. (5) Interpleader's instructions number 4 and 7 are erroneous in that they require plaintiff to prove that interpleader had both actual notice and actual knowledge of Schooley's fraud. Conversely the court erred in excluding plaintiff's instruction number 4. *Van Raalte v. Harrington*, 101 Mo. 602, 608, 609, 610, 612; *Rupe v. Alkire*, 77 Mo. 641, 643; *State to use v. Estel*, 6 Mo. App. 6, 10. (6) Interpleader's instruction number 4 is erroneous in that it tells the jury that the law did not (inferentially, under any circumstances) require interpleader to make inquiry. Conversely the court erred in refusing plaintiff's request number 4, which correctly states the rule that the jury may infer knowledge if they find the purchaser had notice sufficient to put him upon inquiry.

*Rupe v. Alkire,* 77 Mo. 641, 644; *Van Raalte v. Harrington,* 101 Mo. 602, 612; *State ex rel. v. Mason,* 112 Mo. 374, 382, *ad fin.; State to use v. Estel,* 6 Mo. App. 6, 10; *Barrett v. Davis,* 104 Mo. 549, 561; *Speck v. Riggin,* 40 Mo. 405. (7) The court erred in refusing plaintiff's request number 6 touching gross inadequacy of price. *State ex rel. v. Mason,* 112 Mo. 381, 384; *Frankenthal v. Goldstein,* 43 Mo. App. 189, 200. (8) Notice is actual when the party to be charged knows of the existence of the facts, or is conscious of having the means of knowledge although he may not use them. *Speck v. Riggin,* 40 Mo. 405.

*T. H. Harvey, M. C. James,* and *John Welborn* for respondent.

(1) The trial court committed no error in giving instructions for the interpleader. We submit the following authorities to support the trial court in giving said instructions: *Singer v. Goldenburg,* 17 Mo. App. 549; *Albert v. Bessel,* 88 Mo. 150; *Hausman v. Hope,* 20 Mo. App. 193; *Meder v. Marks,* 20 Mo. App. 369; *Phillips v. Shall,* 21 Mo. App. 38; *Priest v. Way,* 87 Mo. 16; *State ex rel. v. Merritt,* 70 Mo. 275; *Robinson v. Dryden,* 118 Mo. 534; *Hardwicke v. Hamilton,* 121 Mo. 465; *State v. Hope,* 88 Mo. 430. (2) The trial court committed no error in refusing to give for plaintiff instructions numbered 4, 6, and 8. We submit the following authority to show that said instructions were properly refused: *State v. Mason,* 112 Mo. 374.

SMITH, P. J.—The plaintiff, a business corporation, brought a suit by attachment against the defendant Schooley and caused the writ to be levied on certain goods as the property of the defendant, which were in the possession of the interpleader, Herr. Herr,

by his interplea filed in the cause, claimed that he was, at the time of the seizure, the owner of the property and entitled to the possession thereof. The answer of the plaintiff to the interplea was, in effect, that the sale and transfer under which interpleader acquired his alleged ownership was made by the defendant with the intent to defraud his creditors and that the interpleader was a participant therein.

There was a trial resulting in a judgment for the interpleader. The plaintiff appealed.

It appears from the evidence that the defendant commenced business in 1893, with about $1,000 capital; that in January, 1895, he sold out his entire stock, which, with ten per cent off, invoiced $4,919, to the interpleader, in consideration of which the latter paid the former $1,250 in money, a note of the former for $150, and conveyed to the brothers of the former one hundred and sixty-three acres of land lying in the state of Kansas, near the Colorado line. This land was, perhaps, of the value of $500. The defendant, at the time of the sale to interpleader, had no other property and this the latter knew.

A few months prior to the sale the defendant made a voluntary statement to the Bradstreet Commercial Agency, that his total assets were $14,000 and his liabilities $1,500. He told the agency at the time of making the statement that he made the same to furnish a basis of credit. He also made written statements to a number of jobbers with whom he dealt, showing that his net assets were from $9,000 to $14,000. Just preceding the sale, he made large purchases on credit from the various houses to which he had submitted statements as to his financial condition. It appears that the interpleader was without mercantile experience. He had been engaged in the handling of grain. He and defendant had been, and at the time of the

sale, were jointly engaged in buying and selling grain. The interpleader kept the book showing their grain transactions at the defendant's store. The interpleader was well and intimately acquainted with the defendant, and was much about his store. He knew his reputation in the community for honesty. He knew too, as he testified himself, that the talk in the community was that defendant had burned a previous store to get the insurance. He also testified that defendant was not the kind of a man he cared to be associated with in business. Not only this, but he further testified that he knew that the defendant had been selling goods below prime cost. He knew that a large number of defendant's merchandise bills were unpaid. It further appears that when the sale was made, the defendant required the interpleader to deliver him the $1,250 in lawful money. It appears from the testimony of the interpleader that the defendant had never seen the Kansas land and that he neither knew nor inquired its value.

The interpleader conceded that he bought the defendant's stock of goods on speculation. It appears that in a short time after the purchase, interpleader sold the stock at eighty per cent of the cost and then made a large profit. It further appears that interpleader was a man of very small means. The transaction of the sale was conducted with much secrecy. The interpleader after the sale made several conflicting statements in reference to the terms and conditions of the same. There was much other evidence tending to show a great number of facts and circumstances reflecting more or less light on the transaction in question. For the purpose, no doubt, of showing the confidential and intimate personal relations between the defendant and the interpleader, it was proved that the former, on account of the transactions hereinbefore

referred to, had been indicted for criminal fraud and that the latter had become surety for the former's appearance. With this brief outline of the facts of the case, we may proceed to notice the several errors assigned in respect to the action of the court in the giving and refusing of instructions.

The plaintiff objects that the court committed prejudicial error in refusing the following instruction asked by it and numbered 4: "If you believe from the evidence that defendant Schooley in making the transfer of the goods in question to interpleader Herr intended to hinder, delay, or defraud his creditors, or any of them, then you may, in order to determine whether interpleader Herr had notice or knowledge of such fraudulent intent, take into consideration any information bearing thereon which the evidence shows Herr to have previously acquired from any source. And you may also take into consideration all acts, declarations, and conduct of Schooley, of which Herr had knowledge, as well as all the facts and circumstances shown by the evidence to have a bearing upon the transactions of Herr and Schooley, and if you believe from the evidence that sufficient notice was, prior to the alleged transfer of the goods interpleaded for, obtained from any or all of these sources by Herr, to put him upon inquiry and as an honest and ordinarily prudent man, which would have led to the knowledge of the fraudulent intent of Schooley, and of the fraudulent character of his intent in transferring the goods in question here, then you have the right to infer that Herr had knowledge of the fraudulent character of such transactions."

This instruction, we think, correctly expressed the law. Where the vendee has paid a valuable consideration and it is sought to avoid the sale, because he had notice of, or knowledge of, a fraudulent intent upon

the part of the vendor, the question to be submitted to the jury is, whether he had notice or knowledge of the fraudulent purpose of the vendor, and not whether he had knowledge of facts which would put a prudent person upon inquiry and lead to a discovery of fraud. Facts which would put a person upon inquiry will be evidence from which the inference may be drawn, but it should be left to the jury to make the inference. As said in *Van Raalte v. Harrington*, 101 Mo. 602, "It is one thing to say knowledge may be inferred from facts and circumstances sufficient to put a person upon inquiry, but it is a different thing to say that such circumstances are as a matter of law knowledge." And so in *Rupe v. Alkire*, 77 Mo. 641, an instruction was approved that declared that "if the jury believe from the evidence that sufficient knowledge was obtained by the plaintiff to put him upon his inquiry, then the jury have the right to infer that the plaintiff had knowledge of the fraudulent character of the transaction, if they further find it was, in fact, fraudulent."

The knowledge of the fraud must be actual and not constructive. The adjudged cases hold that where the title of a vendee has been attacked, because of the intent of the vendor to hinder, delay, or defraud his creditors by the sale, those making the attack must prove that the vendee had actual knowledge of and participated in the fraud. Notice or knowledge need not be shown by direct evidence, but may be inferred from other facts and circumstances. *Barnett v. Davis*, 104 Mo. 549; *State v. Mason*, 112 Mo. 374; *State v. Estel*, 6 Mo. App. 6.

The enunciation of the plaintiff's said refused instruction was in harmony with the principles just stated and should have been given. It clearly submitted to the jury the question whether the interpleader had notice or knowledge of the fraudulent purpose of the

defendant. Under the instructions given by the court, unless the plaintiff proved by direct and positive evidence that the interpleader had notice or knowledge of the fraud, it could not recover. The jury were too much restricted in their consideration of the question as to whether the interpleader had notice or knowledge of the defendant's fraud. The plaintiff, by the action of the court, was denied the benefit of the only rule of law by which it was possible for it to establish a knowledge of the fraud on the part of the interpleader.

The plaintiff further objects that the court erred in refusing its sixth instruction, which is as follows: "The jury is instructed that inadequacy of price is often a badge of fraud, and in this case, if they believe from the evidence that S. V. Schooley intended, by the sale of the goods in question to interpleader Herr, to hinder, delay, or defraud his creditors, and that the value of the money and property which said interpleader Herr turned over for the goods he bought was so grossly inadequate as to shock the sense of right of an honest man, they have the right to infer that said Herr intended to assist Schooley to accomplish his purpose." It seems to us that it would be quite difficult for anyone subjecting the evidence contained in the record to the most cursory examination, to resist the conclusion that the facts it tends to prove fully warrant the application of the rule embodied in the foregoing instruction, especially so in view of what is said in *State ex rel. v. Mason*, 112 Mo. 374.

The plaintiff complains of the action of the court in giving the interpleader's fourth instruction, which, amongst other things, told the jury that the "law did not require the interpleader, if he was acting in good faith when he purchased, paid for, and received said stock of goods from defendant, to inquire into the motives and intentions of defendant in making the sale." This was

but the declaration of a mere abstraction. Besides this, it left the jury to guess at the technical meaning of the words "acting in good faith." The court should have properly defined these terms and then left it to the jury to say from the evidence whether the interpleader was a purchaser acting in good faith, within the meaning of these terms, as defined by it. If the interpleader was a *bona fide* purchaser, he was not in duty bound to inquire into the motives of the defendant for making the sale. But if, before the sale and transfer, he had knowledge of such facts and circumstances as would put an ordinarily prudent man upon inquiry, which, if pursued, would have led to the knowledge of the fraudulent intent of the defendant—this would be sufficient to justify the inference of knowledge of such fraudulent intent. This instruction was calculated to mislead the jury and should not have been given.

The plaintiff further objects that the court erred in giving interpleader's second instruction. This instruction is needlessly prolix. It in effect told the jury that if interpleader "in good faith and for a valuable consideration purchased" the goods in question, and was in possession at the time of the seizure, then the title was in him, even though he then knew that defendant was largely indebted to plaintiff and others for the same. One reason why it should not have been given is, that neither it nor any other instruction defined the terms "in good faith and for a valuable consideration." The jury was not presumed to know the technical meaning of these terms. Such meaning was left to their mere conjecture. If the jury believed from the evidence that the interpleader purchased the goods without knowledge of the fraudulent intent of the defendant, and without an intent to assist in a fraudulent scheme and for a valuable consideration,

then he was the owner of the goods at the time of the seizure, under the writ, and entitled to recover the possession thereof.

But this is not all. This instruction singles out from all the other facts that of the interpleader's knowledge of the indebtedness of the defendant for the goods, and then tells the jury that this is not sufficient to vitiate the interpleader's title. It is thus seen that all the other facts which the evidence tends to prove are left out of consideration. ' The allegation of the answer, to the effect that the sale and transfer were made by defendant to defraud his creditors, and that the interpleader participated therein, was supported by evidence of many facts. Among these was that of the insolvency of the defendant; that defendant was selling off his goods below cost, with knowledge of interpleader; the very limited financial resources of the interpleader; the false statements made by defendant to the Bradstreet Commercial Agency, and to the wholesale merchants with whom he dealt, as a basis of credit; the intimate personal and business relations existing between defendant and interpleader, at the time of the sale and transfer; the fact that the defendant requested the interpleader to pay him the purchase price of the goods in actual money; the inadequacy of the price paid for the goods; the admitted fact that the defendant took in part payment for the goods the land in the sand dunes of Western Kansas, at a valuation of $3,000, when its real value did not probably exceed $500, and that, too, when he had never seen the same and did not know or inquire its value; the fact that interpleader admitted before his purchase that he knew that it was generally believed and charged in the community that the defendant had been guilty of fraud and dishonesty in obtaining the insurance for the loss of a previous stock of goods; the

fact admitted by interpleader that the defendant ought to be in the penitentiary and that he was not a fit man for a business associate, that the interpleader was not a merchant and bought the stock of goods on speculation, and that he shortly after his purchase sold the same at a profit of at least $2,000. These, and many other facts, were shown, which had a tendency to establish the defendant's fraud and the participation therein of interpleader, were ignored by the interpleader's instruction. When considered along with that referred to in the said instruction, they were ample to justify the inference of the fraud alleged in the answer. It therefore becomes manifest that the instruction, in leaving out of view all the facts which the evidence conduced to show, was entirely too narrow in its scope and was violative of the well established principle that an instruction is erroneous which singles out a certain fact or facts, and directs a verdict regardless of all the other facts at issue. *Bank v. Murdock*, 62 Mo. 70, and cases cited.

V. If the interpleader's second instruction had informed the jury that it was admitted by the pleadings that he was in the open, notorious, and visible possession of the goods, at the time of the seizure, and that such possession was *prima facie* evidence of ownership and that accordingly their verdict should have been for him, unless they further found from the evidence that the defendant in selling such goods to interpleader, intended thereby to defraud, hinder, or delay his creditors and that interpleader had knowledge of such fraudulent intention on the part of the defendant, at the time he purchased the goods, the plaintiff would have had no just ground of complaint. But to declare, as it did, that the jury must find for the interpleader unless plaintiff "has shown by a preponderance of evi-

dence that interpleader's *prima facie* title is wrongful and fraudulent," was to leave the jury to conjecture what was meant by a "wrongful and fraudulent" *prima facie* title. Such an instruction, by its very terms, was calculated to confuse and mislead the jury.

The judgment must be reversed and cause remanded. All concur.